# Kemper, Appellant, *v.* Fort.

*Libel—Libelous matter in pleadings—Privileged communication.*

When alleged libelous matter in pleadings is relevant and pertinent there is no liability for uttering it. Where the question of the relevancy and pertinency of matters alleged in pleadings is to be inquired into, all doubt should be resolved in favor of relevancy and pertinency.

Where a testator devises and bequeaths a portion of his estate to his executors, to pay over the income to a daughter for life, and after her death to divide the principal among her children, and a guardian of one of the two children of the daughter files a petition for a review of the accounts of the executors, and the other son of the daughter notifies the executors that he was her only legitimate child, and that the petitioner's ward was illegitimate, and the executors set up this matter in their answer to the petition, the daughter cannot maintain an action against them for an alleged libel.

Argued Jan. 15, 1907. Appeal, No. 348, Jan. T., 1906, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March T., 1903, No. 3,736, on verdict for defendant in case of Mary Kemper v. Thomas R. Fort, Jr. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass for libel. Before AUDENRIED, J.

At the trial it appeared that one Austin W. Bennett, as guardian for Jesse C. Claggett, filed a petition in the orphans' court as of January Term, 1896, No. 473, to review the accounts of William S. Price and Thomas R. Fort, Jr., executors and trustees under the will of Thomas W. Price, deceased. It was claimed by Jesse C. Claggett that as a child of Mary S. Claggett, daughter of the testator, and a remainder-man under his grandfather's will, he had a standing to maintain the petition.

The executors filed an answer in which they used the following language :

" And they further aver that the said Jesse C. Claggett denies that the said Jesse C. Claggett, minor, is his child, and aver that the mother of said minor, Mary S. Claggett, has confessed both by word of mouth and by writing that her son, the said minor, on behalf of whom this petition is presented, is not the son of the said Jesse C. Claggett ; basing upon these and other facts known to the respondents the respondents aver that the minor represented by Austin W. Bennett as guardian is not the legitimate issue of Mary S. Claggett, but is an illegitimate child, and hence is in no wise entitled to take under the bequest in the will of Thomas W. Price, deceased, to the issue of Mary S. Claggett, and is not entitled to maintain the citation in this case."

The court gave binding instructions for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Joseph Gilfillan,* with him *W. E. Chapman* and *George S. Graham,* for appellant.—A party or witness is not absolutely privileged for any and everything that he may say in the course of a judicial proceeding, whether pertinent or otherwise : Com. v. Culver, 1 Clark, 361 ; Gray v. Pentland, 2 S. & R. 23 ; Chapman v. Calder, 14 Pa. 365.

A witness or party is not protected from a charge of libel if the libelous matter is not pertinent to the issue : Scottish Rite, etc., Aid Assn. v. Union Trust Co., 195 Pa. 45.

*Henry Budd*, with him *R. D. Maxwell*, for appellee.—The language on the answer was privileged : Revis v. Smith, 18 C. B. 126 ; Henderson v. Broomhead, 4 H. & N. 569 ; Lake v. King, 1 Saund. 120 ; Bartlett v. Christhilf, 69 Md. 219 (14 Atl. Repr. 518) ; Runge v. Franklin, 72 Texas, 585 (10 S. W. Repr. 721) ; Abbott v. Nat. Bank of Commerce, 20 Wash. 552 (56 Pac. Repr. 376) ; Hartsock v. Reddick, 6 Blackf. (Ind.) 255 ; Griffith v. Slinkard, 146 Ind. 117 (44 N. E. Repr. 1001) ; Hoar v. Wood, 44 Mass. 193 ; Warner v. Paine, 4 N. Y. Super. Ct. 195 ; Moore v. Bank, 123 N. Y. 420 (25 N. E. Repr. 1048) ; Wilson v. Sullivan, 81 Ga. 238 (7 S. E. Repr. 274) ; Hardin v. Cumstock, 2 A. K. Marsh. 480 ; Gains v. Ætna Ins. Co., 47 S. W. Repr. 884 ; Lea v. White, 36 Tenn. 110 ; Strauss v. Meyer, 48 Ill. 385 ; Ash v. Zwietusch, 159 Ill. 455 (42 N. E. Repr. 854) ; Jones v. Brownlee, 161 Mo. 258 (61 S. W. Repr. 795) ; Hart v. Baxter, 47 Mich. 198 (10 N. W. Repr. 198) ; Johnson v. Brown, 13 West. Va. 71.

OPINION BY MR. JUSTICE BROWN, October 21, 1907 :

The libelous matter of which the appellant complains appears in two answers in the orphans' court of Philadelphia county to petitions filed by Austin W. Bennett, guardian of Jesse C. Claggett, for a review of the accounts of Thomas R. Fort, Jr., the appellee, and William S. Price, executors and trustees under the will of Thomas W. Price, deceased, and for an order to set aside the sale of certain real estate made by them.   Thomas W. Price, the father of the appellant, died in 1895.   At that time she was the wife of Jesse C. Claggett, and by her father's will the sum of $50,000 was given to his executors in trust, the income to be paid to her during life, and at her death to be devoted to the maintenance of her " issue " for a certain time, after which there was to be an equal division of the principal " to and among the children " of the said Mary S. Claggett.   In 1900 she was divorced from her husband, Jesse C. Claggett, and was subquently married to L. S. Kemper.   In the answers filed in the orphans' court by the two executors and trustees there was an averment that Jesse C. Claggett was the illegitimate child of the said Mary S. Claggett, as she has " confessed both by word of mouth and by writing," and, in view of this confession and other facts

known to the respondents, they denied the right of the said
Jesse C. Claggett to take under the bequest in the will of the
said Thomas W. Price, deceased, and of his guardian to ask
for the citations.

On the trial it appeared that the allegation of the illegiti-
macy of Jesse C. Claggett, Jr., was false. It was shown, how-
ever, that Jesse C. Claggett, the former husband of appellant,
had told the appellee that the child was not his, but another's,
and that his wife had so admitted to him. This information
was conveyed by Claggett to the appellee as a result of an in-
vestigation instituted by him upon being informed by Thomas
Claggett, the brother of Jesse C. Claggett, that the latter was
illegitimate, and, therefore, not interested in the estate of
Thomas W. Price. Thomas Claggett notified Fort that he
was the sole party in remainder after his mother's death, and
gave further notice to him as executor and trustee to see to it
that Jesse C. Claggett was not permitted to share in the trust
estate. It was as the result of this notice that Fort set inqui-
ries on foot in relation to the legitimacy of Jesse C. Clag-
gett, Jr., and, in the course of his investigation, the statement of
the boy's illegitimacy was made to him by the appellant's former
husband. The information acquired by Fort was communi-
cated to his counsel and his co-trustee, who was also a member
of the bar, and by the advice of their counsel, and with the
consent of William S. Price, the alleged libelous statement was
set forth in the answers. On this state of facts the court di-
rected the jury to find in favor of the defendant, holding that
whether the allegation of illegitimacy was true or false, it was,
under the undisputed facts, privileged, and for making it in the
answers the defendant was not responsible to the plaintiff.

In England, as far back as the time of Coke, anything said or
written in legal proceedings was absolutely privileged. In Cut-
ler and Dixon, Coke's Reports, Part IV, p. 14, it was adjudged,
" that if one exhibits articles to justices of peace against a cer-
tain person, containing divers great abuses and misdemea-
nors, not only concerning the petitioners themselves, but many
others, and all this to the intent that he should be bound to
his good behavior; in this case the party accused shall not
have for any matter contained in such articles any action
upon the case, for they have pursued the ordinary course of

Justice in such case; and if actions should be permitted in such cases, those who have just cause of complaint, would not dare to complain for fear of infinite vexation." And on the same page, in Buckley and Wood, " It was resolved per totam curiam, that for any matter contained in the bill that was examinable in the said court, no action lies, although the matter is merely false, because it was in course of justice." In The King v. Skinner, Lofft, 55, on a motion to quash the indictment against the defendant, who, as one of his majesty's justices of the peace, was charged with having said to a grand jury before him in the general sessions of the county, " You are a seditious, scandalous, corrupt and perjured jury," Lord Mansfield remarked : " Neither party, witness, counsel, jury or judge, can be put to answer, civilly or criminally, for words spoken in office. If the words spoken are opprobrious or irrelevant to a case, the court will take notice of them as a contempt, and examine on information. If anything of mala mens is found on such enquiry it will be punished suitably." In comparatively recent times, in Revis v. Smith, 86 E. C. L. 127, it was held that no action will lie against a man for a statement made by him, whether by affidavit or viva voce, in the course of a judicial proceeding, even though it be alleged to have been made " falsely and maliciously, and without any reasonable or probable cause." That case was followed by Henderson v. Broomhead, 4 H. & N. 569, and it was there said by CROMPTON, J. : " No action will lie for words spoken or written in the course of any judicial proceeding. In spite of all that can be said against it, we find the rule acted upon from the earliest times. The mischief would be immense if the person aggrieved, instead of preferring an indictment for perjury, could turn his complaint into a civil action. By universal assent it appears that in this country no such action lies. CRESSWELL, J., pointed out, in Revis v. Smith, 18 C. B. 126 (E. C. L. R. vol. 86), that the inconvenience is much less than it would be if the rule were otherwise. The origin of the rule was the great mischief that would result if witnesses in courts of justice were not at liberty to speak freely, subject only to the animadversion of the court. The attempts to obtain redress for defamation having failed, an effort was made in Revis v. Smith to sus-

tain an action analogous to an action for malicious prosecution. That seems to have been done in despair. The rule is inflexible that no action will lie for words spoken or written in the course of giving evidence." Another case that may be cited is Seaman v. Netherclift, L. R. 1 C. P. Div. 540, where it was said by Lord Coleridge, C. J. : " Now, a long course of authorities, of which perhaps the best known, as the most remarkable, is the case of Astley v. Younge (2 Burr. 807), has decided that no action of slander can be brought for any statement made by the parties either in the pleadings or during the conduct of the case. The law is so stated very clearly by Lord Eldon in Johnson v. Evans (3 Esp. 32).; it is so stated also, not indeed with absolute certainty, in a note to the well-known case of Hodgson v. Scarlett (1 B. & Ald. 232), the author of which note, we learn from Baron Alderson in Gibbs v. Pike (9 M. & W. 351) to have been Mr. Justice Holroyd himself. But I conceive the law on this point to be now quite certain, although most men of any experience in the profession must have seen many instances in which judicial proceedings have been made by parties to them to serve the ends of private malignity. It is equally certain, however, nor has any question ever been raised, that the privilege of parties is confined to what they do or say in the conduct of the case."

Upon a review of the English authorities the rule, as deduced from them in Starkie on Slander and Libel, sec. 213, is that, " On grounds of public policy, no action, either for slander or libel, can be maintained against a judge, magistrate, or person presiding in a judicial capacity, of any court or other tribunal, judicial or military, recognized by and constituted according to law ; nor against suitors, prosecutors, witnesses, counsel or jurors, for anything said or done, relative to the matter in hand, in the ordinary course of a judicial proceeding, investigation or inquiry, whether civil or criminal, by or before any such tribunal, even if it be false and malicious, and without reasonable and probable cause : and the same with regard to statements contained in affidavits, pleadings and other proceedings in the usual and regular course of procedure." In sec. 196, it is said by the same learned author : " As to defamatory statements and other publications made in the course of proceedings in courts of justice; by the general policy of the law, the oc-

casion is such that it not only repels the presumption of malice, but, as it appears, excludes all evidence of malice; and allows the occasion and circumstances to supply an absolute and peremptory bar to an action of slander or libel in respect of any such statements or publications. And the reason is founded on the principle that 'the law will rather suffer a private mischief than a public inconvenience': and that persons engaged in the administration of the law, or who bring offenders to justice, or who do or seek justice in respect of wrongs or injuries suffered, or give evidence as to any such, or make defense thereto, may be unfettered in the discharge of duties of such paramount public importance; and may not be deterred from so doing by the fear of actions of defamation. And accordingly the law, without regard to the question of intention, and on grounds of obvious policy, repels the claim to damages in respect of any publication, whether oral or written, made in the ordinary course of a judicial proceeding, whether civil or criminal; and this rule applies to judges, juries, witnesses, suitors, and prosecutors, in respect of anything stated by them in the course of a judicial proceeding." In some of the English cases, under a qualification of this rule, protection is given from a slander or libel suit to counsel or a party to a cause for what may be said or written in it (outside of the pleadings) only when the same be pertinent to it.

Some of the courts in this country—among them those of Indiana, Maryland, Texas and Washington—have followed the English rule, that for any defamatory matter appearing in pleadings no action can be maintained, the immunity being absolute. In Bartlett v. Christhilf, 69 Md. 219, it is said : " This privilege, protecting against a suit for libel or slander, is founded upon what would seem to be a sound public policy which looks to the free and unfettered administration of justice though as an incidental result it may, in some instances, afford an immunity to the evil disposed and malignant slanderer. . . . It is better, therefore, where the statements are false and knowingly false, to leave the party injured to the redress which the criminal court may apply, than to open the door for the institution of civil suits which may be successfully used as an efficient means to obstruct the full and fearless pursuit and administration of justice; " and, in Runge v. Franklin, 72 Tex.

585 : " We believe it is and ought to be the law that proceedings in civil courts are absolutely privileged. Citizens ought to have the unqualified right to appeal to the civil courts for redress without the fear of being called to answer in damages for libel." After reviewing the authorities in support of this view, Townshend, in his work on Libel and Slander, sec. 221, subscribes to it as follows : " The right of appealing to the civil tribunals is more extensive than the right of appealing to the criminal tribunals. In a civil action, whatever the complainant may allege in his pleading as or in connection with his grounds of complaint can never give a right of action for libel. The immunity thus enjoyed by a party complaining extends also to a party defending ; whatever one may allege in his pleadings by way of defense to the charge brought against him or by way of countercharge, counterclaim, or set-off, can never give a right of action for libel. The rule as thus laid down has been doubted by some, and it has been said that if the tribunal to which the complaint be made has no jurisdiction of the subject-matter, or if the defamatory matter be irrelevant to the matter in hand, or if the party complaining or defending maliciously inserts defamatory matter in his pleading, in such cases the party aggrieved may maintain his action for slander or libel. Notwithstanding the dicta to the contrary, we believe the better and the prevailing opinion to be, that for any defamatory matter contained in a pleading in a court of civil jurisdiction, no action for libel can be maintained; the power possessed by courts to strike out scandalous matter from the proceedings before them, and to punish as for a contempt, is considered a sufficient guaranty against the abuse of this privilege ; but whatever may be the reason, it seems certain that where there is a perversion of the right, ' the policy of the law steps in and controls the individual right of redress.' "

Other courts in the United States have not followed the foregoing view. In McLaughlin v. Cowley, 127 Mass. 316, it was held that defamatory statements not pertinent or material to the issue are not privileged ; and, in Garr v. Selden, 4 Comstock, 91, the New York court of appeals decided that whether the matter alleged in the pleadings was privileged depended upon whether it was pertinent or material. A most exhaustive opinion is found in Johnson v. Brown et al., 13 W. Va. 71, and,

after a review of all the authorities, it was held that "the public policy, on which is based this absolute exemption from suit for libelous matters contained in the proceedings, or spoken in a regular course of judicial proceedings, is not violated by the qualification, that matter complained of must be pertinent, even though it be contained in the pleadings in the cause; and that the rule, that it must be pertinent, which is applied to the words of counsel, or to other proceedings in a case, to make them absolutely privileged, should also on reason and authority be applied to the pleadings of parties." In Wilson v. Sullivan, 81 Ga. 238, the alleged libelous matter was contained in a sworn bill asking for an injunction. In an action for damages the court thus generalizes the law: "All charges, all allegations and averments contained in regular pleadings addressed to and filed in a court of competent jurisdiction, which are pertinent and material to the redress or relief sought, whether legally sufficient to obtain it or not, are absolutely privileged. However false and malicious, they are not libelous. This privilege rests on public policy, which allows all suitors (however bold and wicked, however virtuous and timid) to secure access to the tribunals of justice with whatever complaint, true or false, real or fictitious, they choose to present, provided only that it be such as the court whose jurisdiction is involved has power to entertain and adjudicate. The alleged libelous matter in the present case, being contained in a bill praying for an injunction, was relevant and material; consequently, absolutely privileged."

We are inclined to the view that, for false and malicious defamatory allegations appearing in pleadings filed in a court having jurisdiction of what is set forth in them, there is absolute immunity from a suit for libel at the instance of the defamed party only when the defamatory words are relevant and pertinent to the matter or matters to be inquired into by the court; but whether this rule or that of absolute immunity is the correct one, we are not called upon to decide in this case, for the authorities, though differing as to when immunity is absolute, are uniform that when alleged libelous matter in pleadings is relevant and pertinent, there is no liability for uttering it. Public policy requires this, even if at times the privilege of immunity for false and malicious averments in

pleadings is abused.   Justice can be administered only when parties are permitted to plead freely in the courts and to aver whatever ought to be known without fear of consequences, if a material and pertinent averment should not be sustained. Wrong may at times be done to a defamed party, but it is damnum absque injuria.   The inconvenience of the individual must yield to a rule for the good of the general public.

Where the question of the relevancy and pertinency of matters alleged in pleadings is to be inquired into, all doubt should be resolved in favor of relevancy and pertinency.   In the present case the averment of illegitimacy was clearly pertinent. The testator, Thomas W. Price, directed that upon the death of his daughter the income for awhile, and ultimately the principal, should go to her " issue, " to her " children. "   That under the common law these words mean legitimate issue and children, cannot be questioned, and the testator is presumed to have so used them : Ellis v. Houstown, L. R. 10 Ch. D. 239 ; McNaughtan's Trust, 35 Law Times Repr. 774.   The averments of illegitimacy would not be pertinent if the question was as to the right of Jesse C. Claggett to take or inherit from his mother, for under the act of 1855 illegitimates take from their mothers ; but appellant's children will take nothing from her under the will of her father.   They take under it directly from him and, when he designated the issue or children of his daughter as his legatees, he must be understood as having meant legitimate issue or children.   When notified by Thomas Claggett that the right of Jesse C. Claggett to participate in the estate of the father of the appellant was questioned, the appellee properly questioned it in the answers filed.   The assignments of error are all overruled and the judgment is affirmed.