## Wagner v. Bell et al.

*Paul A. McGinley*, for plaintiff.

*Butz, Steckel, Hudders & Rupp* and *Snyder, Wert & Wilcox*, for defendants.

DIEFENDERFER, J., October 17, 1949.—A bill of complaint was filed by plaintiff, Ralph A. Wagner, in trespass for libel. Preliminary objections were filed, after which an amended bill of complaint was again filed to which again defendants filed preliminary objections. Plaintiff alleges damage through defendants' malicious writing and publication of the words "mentally sick" on a printed form furnished by the Pennsylvania Bureau of Employment and Unemployment Compensation. Plaintiff does not claim special damages and, therefore, he regards the phrase "mentally sick" as libelous per se.

Defendants' preliminary objections may be divided as follows: (1) Sufficient publication has not been alleged and, therefore, defendant moves to strike for lack of conformity to rules of court; (2) the names of a sufficient number of people who read the words complained of have not been set forth in the complaint and, therefore, a motion for a more specific statement of complaint is made; (3) an objection is made in the nature of a demurrer based upon three grounds: that the communication is privileged, that there was no publication, and that the words alleged to have been written do not constitute libel per se.

By stipulation of the parties, the Commonwealth of Pennsylvania, Department of Labor and Industry, to the use of the Unemployment Compensation Fund, has been granted leave to file a brief as amicus curiæ.

The facts are as follows: Wagner was employed by Bell. Buenzle, an independent contractor accountant, was employed by Bell. Wagner voluntarily quit his job. He applied for unemployment compensation. Form UC-45A (1-45) was sent to Bell. Question 3 on said form reads as follows: "If you have knowledge that this complainant is not able to work or is not available for work explain." Buenzle wrote the words in answer thereto, "mentally sick". The form was sent to the Allentown offices of the Pennsylvania Bureau of Employment and Unemployment Compensation where it was read by Alvin H. Snyder, who is in the employ of the bureau. Plaintiff avers that the statement was false and maliciously written and as a result he was unable to secure employment and held up to contempt and scorn among his neighbors much to his financial loss. There was no averment that the form was shown to persons other than the employes of the Bureau of Employment and Unemployment Compensation.

There are two questions arising in this case: (1) Is the matter contained on the form privileged and, there-

fore not the basis of a libel suit? (2) Has there been any publication of the alleged libel?

On August 14, 1935, the Federal Social Security Act was passed by Congress, 49 Stat. at L. 620, 42 U. S. C. §301, et seq. A portion of the act, 42 U. S. C. §503, pertained to unemployment compensation and provided inter alia that the board might make certification for payment to any State when the law of such State is approved by the board if it provided for certain requirements, to wit:

"(3) Opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied."

On December 5, 1936, the Legislature of Pennsylvania enacted the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, 43 PS §751, et seq. It is the duty of the Department of Labor and Industry to administer the act and it has power to make regulations, require reports from employers and make such investigations and to take such other action as it deems necessary or suitable: 43 PS §761.

By the Act of December 5, 1936, P. L. (1937) 2897, 43 PS §763(a) (c), an Unemployment Compensation Board of Review is created as a departmental administrative board, with all the powers and duties generally vested in and imposed upon departmental administrative boards and commissions by The Administrative Code of April 9, 1929, P. L. 177. Effective May 2, 1949, The Administrative Code of 1929 was amended to include the Unemployment Compensation Board of Review: Act of May 2, 1949 P. L. 867, 71 PS §62.

It is the duty of the board to hear appeals arising for claims from compensation, adopt, amend or rescind rules, undertake such investigations and take such action required for the hearing and disposition of appeals as it deems necessary and consistent with the code: 43 PS §763(d). Referees may be named by the Gov-

ernor to take testimony in appeals before the board: 43 PS §763(e).

Employers are required to keep accurate employment records containing such information as may be prescribed. These records are open to inspection by the department and its agents. The remainder of this section of the act (43 PS §766) is quoted as follows:

"The department may require from such employers such reports as it deems necessary, which shall be sworn to, if required by the department.

"Information thus obtained shall not be made public or be open to public inspection, other than to the members of the board, the officers and employes of the department and other public employes in the performance of their public duties, but any employe or employer at a hearing on an appeal shall, upon request, be supplied with information from such records to the extent necessary for the proper presentation and consideration of the appeal.

"Any officer, or employe of the department or the board, or any other public employe, who shall violate any of the provisions of this section shall, upon conviction thereof in a summary proceeding, be sentenced to pay a fine of not less than twenty nor more than two hundred dollars, and in default of the payment of such fine and cost of prosecution shall be sentenced to imprisonment for not longer than thirty days."

Insofar as the matter of determining the employe's right to compensation is concerned, the act provides that the department shall initially and promptly examine any claims filed and on the basis of facts found by it, determine whether or not the claim for compensation is valid: 43 PS §821. The same section provides for an appeal from the decision to the board.

The following section of the act provides that when an appeal from the decision of the department is taken, a referee shall, after hearing, affirm, modify or reverse

the department (43 PS §822). It is interesting to note that the Superior Court has held that the referee and the board do not fulfill their duty by merely hearing witnesses, but they must, in certain cases, call witnesses and initiate an investigation to determine the true facts: Phillips v. Unemployment Compensation Board of Review et al., 152 Pa. Superior Ct. 75.

The board itself has power on its own motion or appeal, to remove or transfer claims pending before or decided by a referee: 43 PS §824. The board has power to administer oaths, issue subpœnas, compel attendance of witnesses, production of documents, etc. (43 PS §826), with further right to appeal to the court of common pleas for the enforcement of its orders: 43 PS §827.

A special section of the act (43 PS §828) provides that no person may be excused from "attending or testifying, or from producing books, papers, correspondence, memoranda, and other records before the department, the board, or any referee or court, in obedience to any summons or subpœna, on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, except that such individual shall not be exempt from prosecution and punishment for perjury committed in so testifying."

Unappealed from decisions are final, but appeals may be taken to the Superior Court, etc.: 43 PS §§828-830, et seq.

Under the penalty provisions of the act, false statements or knowingly failing to disclose a material fact is subject to a fine of not less than $20 or more than

$50, and imprisonment for not longer than 30 days, if made to obtain or increase compensation (43 PS §871), whereas any employer or his agent who makes a false statement or representation, knowing it to be false, or who knowingly fails to disclose a material fact to prevent or reduce compensation, or who wilfully fails or refuses to permit inspection or copying of records, is subject to a fine of not less than $20 or more than $200, or imprisonment for 30 days: 43 PS §872.

Wilful violation of the act, or rules or regulations thereunder, if no other penalty is prescribed, is subject to a fine of $20 to $200 and imprisonment of not more than 30 days: 43 PS §873.

Since plaintiff in this case avers that the information furnished the department will be revealed to others, Administrative Rule No. 4 prohibits disclosure of such information by any officer or employe of the department: C. C. H. Unemployment Insurance Reporter, sec. 5682; also 43 PS §766.

The court is, therefore, of the opinion that the information furnished the department by defendant on form UC-45A(1-45) is privileged. In addition to that this information was furnished to a quasi-judicial tribunal. Under the law, the department may require such information from the employer as it wishes and he is bound to furnish it under pain of fine or imprisonment. Furthermore, the department is not required to act on the information so furnished but must make its own investigation to determine the truth or falsity of the information furnished to it. This question has arisen in various jurisdictions and in all of them the information furnished by the employer to the unemployment compensation authorities has been held absolutely privileged.

In some States the act specifically provides that such statements are privileged. This is true under the statutes of Alabama, Florida, Illinois, Indiana, Kentucky,

Maryland, Michigan, Minnesota, Missouri, Mississippi, North Carolina, South Carolina, South Dakota and West Virginia. Where the act itself contains no such provisions, the courts in every instance have held the communication to be absolutely privileged. See 1 C. C. H. Unemployment Insurance Reporter, sec. 1670.

In a North Dakota Supreme Court case, Stafney v. Standard Oil Co., 71 N. D. 170, 136 A. L. R. 535, the employer advised the department that the separation was brought about by misconduct connected with work. The court points out that a good deal of time at the trial was spent on an endeavor to set up the defense of truth and lack of malice, none of which deals with the question as to whether the document was absolutely privileged. The information furnished by defendant was permitted, invited and required by the bureau. The court points out that where the communication is pertinent to the occasion, falsity and malice are immaterial. In the leading case, and in the note, there are many references to communications to appointing authorities concerning the qualifications of prospective appointee, and it refers to the doctrine that public service requires complete immunity from being called to account for the language used.

Guardian Life Insurance Co. v. Reagan, 155 S. W. (2d) 950 was decided by the Court of Civil Appeals in Texas in 1941. Under the law of Texas, the Insurance Board had authority to issue and revoke licenses of insurance agents. Defendant reported to the board that plaintiff tried to get money from one of its policyholders after he had been discharged as a collector. It was held that the board, having quasi-judicial powers, communications are absolutely privileged and that falsity and malicious intent in such cases are not the subject of judicial inquiry. It is pointed out that this is particularly true where such information is communicated to an officer whose duty

it is to investigate the truth or falsity of the statements so made. The court said, quoting from an earlier case:

" 'There are two classes of privileged occasions or communications, the first absolute privilege, and the second qualified privilege. In the former class it is considered in the interest of the public welfare that all persons should be permitted to utter their sentiments and speak their thoughts freely and fearlessly upon all questions and subjects, and no action for words so spoken or written can be sustained, although falsely made with express malice. This class of privilege matter is founded absolutely on public policy, and the question of malice cuts no figure in connection with it.' "

In White v. United Mills Co., Inc., 208 S. W. (2d) 803, the Kansas City Court of Appeals likewise decided that statements of the type referred to in the case at bar are communications which are absolutely privileged because they are made to a State agency acting in a quasi-judicial capacity on unemployment compensation claims. The court there points out that the provisions of Kansas law which make it a crime to make a false statement to prevent or reduce payment of benefits was not intended to remove the absolute privilege attached to communications made in such proceedings. Although plaintiff there argued that the doctrine of absolute privilege did not apply because there was no proceeding pending before the commissioner at the time of the communication, it was held that the notice of separation was required by law for the purpose of use in view of a possible claim and that, consequently, it fell within the same classification as communications made in a quasi-judicial proceeding.

In Simpson v. Oil Transfer Corp. (1948), 75 F. Supp. 819, the District Court for the Northern District of New York sustained defendant's demurrer to a

complaint similar to that made here. In that case the alleged defamatory matter inferred embezzlement. The court points out the employer is required to furnish the information in question and that the data so furnished is not open to the public. Reference is made to the law making it a misdemeanor for any employe of the State to disclose information so obtained. Even as the Attorney General of Pennsylvania appears in this case, so the Attorney General of New York appeared in that case. The court said:

"The Act may only be properly administered when interpreted so as to encourage full, free and honest reports from both employer and employee, where such reports are the bases of administrative action in the enforcement of the law. Practical considerations, the public good, and the public policy as expressed and as interpreted in the decisions of state courts all lead to the conclusion that pertinent information furnished, as in this case, may not be used in collateral litigation. No further discussion of absolute or qualified privilege is necessary."

Under the law of Pennsylvania, words uttered in a judicial proceeding if pertinent have always been subject to absolute privilege. In Kemper v. Fort, 219 Pa. 85, Mr. Justice Brown points out that this has been the law as far back as the time of Coke, and in that opinion he quotes from opinions of many of the great English judges, including Lord Mansfield, Lord Coleridge, and Lord Eldon.

Quoting from Starkie on Slander and Libel, the court says:

"'On grounds of public policy, no action, either for slander or libel, can be maintained against a judge, magistrate, or person presiding in a judicial capacity, of any court or other tribunal, judicial or military, recognized by and constituted according to law; nor

against suitors, prosecutors, witnesses, counsel or jurors, for anything said or done, relative to the matter in hand, in the ordinary course of a judicial proceeding, investigation or inquiry, whether civil or criminal, by or before any such tribunal, even if it be false and malicious, and without reasonable and probable cause; and the same with regard to statements contained in affidavits, pleadings and other proceedings in the usual and regular course of procedure'."

This case was followed by Yearsley v. Franklin Lamp Manufacturing Co., Inc., et al., 97 Pa. Superior Ct. 583, where the court considered certain defamatory words in an affidavit of defense. The court was unconcerned with the matter of malice or falsity; the chief question being that of relevancy or pertinancy. Citing the Kemper case, Judge Trexler said, on page 540:

"When alleged libelous matter is contained in pleadings, is there any liability for uttering it? The answer is found in Kemper v. Fort, 219 Pa. 85. Justice Brown, in that case, cites a number of authorities and sums up in the following words: 'When alleged libelous matter in pleadings is relevant and pertinent, there is no liability for uttering it. Public policy requires this, even if at times the privilege of immunity for false and malicious averments in pleadings is abused. Justice can be administered only when parties are permitted to plead freely in the courts and to aver whatever ought to be known without fear of consequences, if a material and pertinent averment should not be sustained. Wrong may at times be done to a defamed party, but it is damnum absque injuria. The inconvenience of the individual must yield to a rule for the good of the general public.' . . .

" 'Where the question of the relevancy and pertinency of matters alleged in pleadings is to be inquired

into, all doubts should be resolved in favor of relevancy and pertinency': Kemper v. Fort, supra."

Waber v. Schaffhauser, 34 D. & C. 348, is a later case along the same line as the two previously cited. In the opinion the Kemper case is cited for the proposition that relevancy alone is needed for privilege regardless of malice.

The powers, duties and authority of the Board of Employment and Unemployment Compensation are largely comparable to those of the Workmen's Compensation Board. Both boards act in an area unknown to the common law but in making decisions it cannot be said that their functions are other than judicial. It has been held in Shortz v. Farrell that the functions of the Workmen's Compensation Board "are essentially of a judicial character": 327 Pa. 81, 87. They administer the law; they hear testimony under oath; litigants appear before them by counsel. There are findings of fact and conclusions of law, and opinions are rendered.

As to the second question relating to publication, the court is of the opinion that there has been no publication. The only allegation in this case is the sending of the form in question to Alvin Snyder and others. There is no testimony whatsoever that anyone else saw it. See Satterfield v. McLellan Stores, 215 N. C. 582, 2 S. E. (2d) 709 (North Carolina 1939), which held that the filling out of the form was done pursuant to a duty and sent only to the authorities. Having decided that the statements are subject of absolute privilege and being pertinent to the matter before the unemployment compensation authorities, whether or not they were made maliciously or whether true or false is irrelevant, and secondly, the matter having been furnished only to the employes of the board, who are prohibited by law from divulging the same, there has been no publication of the alleged libel. For a list of decisions in other

jurisdictions and in conformity with the opinion see White v. United Mills Co., Inc., 208 S. W. (2d) 803 (Kans.) 1948; Simpson v. Oil Transfer Corp., 75 F. Supp. 819 (N. Y.) 1948.

Now, October 17, 1949, for the above reasons the preliminary objections filed herein by defendants are sustained and the bill is dismissed at the cost of plaintiff.