## Wachs v. Ramp Consulting Services, Inc.

*Raymond Pearlstine*, for plaintiff.

*Duffy, McTighe & McElhone* and *Frederick B. Smillie*, for defendants.

GROSHENS, J., November 27, 1961. — This case is before the court on defendants' preliminary objections. Plaintiff, David V. Wachs, filed a complaint in trespass against defendants alleging defamation by defendants. An amended complaint was filed on July 6, 1961, and thereafter defendants filed their preliminary objections in the nature of a demurrer and a motion to strike off the complaint for failure to conform to Pa. R. C. P. 1033.

We accept as admitted the facts well pleaded by plaintiff and all inferences reasonably deducible therefrom. From the complaint, we state the facts as follows:

The Ramp Consulting Services, Inc., which we shall refer to as Ramp, is a New York corporation represented in Montgomery County by Charles Blasband and Rubin Mogul, experienced and reputable members of our bar, also defendants herein. On June 12, 1961, an action in assumpsit was filed by Ramp against Robert L. Novell, David V. Wachs and the Lafayette Auto-Matic Parking Corp. Certain allegations in the assumpsit complaint prepared and filed by defendants, Blasband and Mogul, on behalf of Ramp, form the basis for the present action in defamation. These are:

"15. In one of its reports dated June 25, 1959, plaintiff reported that a satisfactory parking garage could be erected on the site now presently occupied by the defendant, Lafayette Auto-Matic Parking Corp."

"16. The above site at the time was owned by Anthony Ciccarone and his wife."

"19. On or about July 23, 1959, Marlyndy Realty Corp., through Ellis Wachs, its vice president and brother of David V. Wachs, the defendant herein, also with a financial interest in Charming Shoppes, Inc., and through David V. Wachs, as its secretary, purchased the premises now occupied by Lafayette Auto-Matic Parking Corp."

"20. The consideration for the above purchase as set forth in the deed was $13,000.00."

"24. On or about May 10, 1960, Marlyndy Realty Corp., through its Vice President, Ellis Wachs and the defendant, David V. Wachs, its secretary, conveyed the premises in question and now occupied by the Lafayette Auto-Matic Parking Corp., to the Lafayette Auto-Matic Parking Corp."

"25. The consideration for such transfer reported in the deed was $50,000.00."

Prior to the institution of the suit in assumpsit, there was recorded in the office of the Recorder of Deeds of Montgomery County a record of the conveyance from Anthony E. Ciccarone and Elizabeth M. Ciccarone, his wife, for the premises 5-7 East Lafayette Street, purchased for the consideration of $13,-000. Also recorded prior to the institution of the suit in assumpsit was a conveyance from Merrill H. Wismer and Kathryn C. Wismer, his wife, to Marlyndy Realty Corp. for the premises 9-11-13 East Lafayette Street, Norristown, for a consideration of $30,000. The deed conveying the premises by Marlyndy Realty Corp. shows a consideration of $50,000 as alleged in paragraph 25 of the complaint in assumpsit. However, this deed reveals that the consideration of $50,000 included both the premises sold by the Ciccarones and the premises sold by the Wismers. This information was available to the public, including defendants, at the time of the institution of the complaint in assumpsit.

On June 13, 1961, there appeared in the two star final edition of the Times Herald, a newspaper published by Norristown Herald, Inc., defendant herein, a news story on the first page setting forth that a lease was signed by the operator of Pigeon Hole Parking Site, and that the directors of Lafayette Auto-Matic Parking Garage, Inc., owners of the Pigeon

Hole Parking facility nearing completion on Lafayette Street, signed a lease for the garage for its operation by Electronic Parking, Inc. The story, set forth in columns 6 and 7 of the first page of the newspapers, bore headlines which attracted the attention of the readers to the story, and was continued on page 14, column 2. On the latter page, and on the same column above the continuation of this news story, there appeared a second news story entitled, "Ramp Firm Sues Parking Corporation." Plaintiff alleges that this second news story was so placed as to attract the attention of readers of the first news story and direct their attention to the lawsuit instituted by Ramp. The news story contained, inter alia, the following:

"There also was an allegation that Marlyndy Realty Corp. in which Wachs and his brother, Ellis, are officers, purchased now what is the garage site for $13,-000.00. Both have an interest in a women's shop on Main Street."

"On or about May 10, as the suit alleges, the Marlyndy Realty Corp., still with the Wachs brothers as officers, conveyed the Lafayette Street property to the Lafayette Auto-Matic Parking Corp. for a consideration 'reported in the deed' of $50,000.00."

Plaintiff alleges that defendant, Charles Blasband, delivered a copy of the complaint to Frederick Becker, a court house reporter for the Times Herald, for the purpose of having the news story of the institution of the lawsuit appear in the same issue of the paper as the news story concerning the signing of the lease.

Plaintiff alleges that the complaint in assumpsit, setting forth that Marlyndy Realty Corp., through defendant, David V. Wachs, conveyed the premises now occupied by the Lafayette Auto-Matic Parking Corp. for a consideration of $50,000 after purchasing it for $13,000, was false, libelous, defamatory, irrelevant and immaterial to the judicial proceedings, and calcu-

lated to falsely inform the public that Marlyndy Realty Corp., through David V. Wachs made a secret profit of $37,000 on the transaction; that it was deliberately designed and intentionally highlighted by defendant newspaper to humiliate, embarrass, impugn and damage the integrity, good name, credit and reputation of plaintiff, David V. Wachs, among his business associates and the stockholders and investors in Lafayette Auto-Matic Parking Corp., of which he was an organizer and promoter; that all defendants at the time of the publication knew, or should have known, that the statements contained in the complaint of Ramp were untrue and defamatory in character.

Thus, plaintiff sues Ramp for the alleged defamation appearing in its complaint in assumpsit, and Blasband and Mogul in their capacity as attorneys for Ramp, and, also, by reason of their delivery of the complaint to the court house reporter for the Norristown Herald, Inc.

The Norristown Herald, Inc., is sued for publishing the alleged libel appearing in Ramp's complaint wilfully, maliciously and intentionally in such a position and under such headlines as would attract readers to the story.

Plaintiff alleges that defendants had a duty to ascertain the facts from the public records and failed to do so, and that they knew, or should have known, the complaint in assumpsit contained false and defamatory statements.

We must determine initially whether the communication is capable of a defamatory meaning: Restatement, Torts, §614(1); Bausewine v. Norristown Herald, 351 Pa. 634 (1945); Boyer v. Pitt Publishing Company, 324 Pa. 154 (1936). In the recent case of Richwine v. Pittsburgh Courier Publishing Co., Inc., 186 Pa. Superior Ct. 644 (1958), the court said at page 647:

"The function of the court and jury is set forth in the Restatement of the Law, Torts, Section 614, '(1) The court determines whether a communication is capable of a defamatory meaning. (2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient.'

"The court, however, must first determine whether the communication is capable of the meaning ascribed to it by the appellant and whether the meaning so ascribed is capable of being defamatory. If either of these questions are decided against the appellant, there is no question to be submitted to the jury."

The Supreme Court has defined a libel as "a malicious publication, expressed either in printing or writing or by signs and pictures, tending to either blacken the memory of one who is dead, or the reputation of one who is alive, and expose him to public hatred, contempt or ridicule": Sarkees v. Warner-West Corp. 349 Pa. 365 (1944).

The Restatement of Torts, §559 states:

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

Plaintiff complains that Ramp, Charles Blasband and Rubin Mogul, falsely informed the public that plaintiff made a secret profit of $37,000 on the sale of the Ciccarone property. It is true that Ramp alleged that Marlyndy Realty Corp. made a profit and David V. Wachs was an officer of that corporation. We think this language may be construed as defamatory. Making a profit is part of the American system and there is nothing wrong in profit making. However, plaintiff alleges that he was a promoter and organizer of the Lafayette Auto-Matic Parking Corp. and that the allegation of the profit is libelous because it implies that he violated his fiduciary duty to Lafayette Auto-

Matic Parking Corp. As a promoter, plaintiff was in a fiduciary position, and a secret profit would be a breach of that relationship.

Ramp's complaint may fairly be read as imputing wrongdoing by David Wachs by indicating a secret profit of $37,000, whereas it appears that such profit was for an amount of $7,000 or less, but the imputation is nonetheless defamatory.

However, even though the language of Ramp's complaint may be defamatory, we must sustain defendants' demurrers to the complaint. Ramp, as a private party, and Blasband and Mogul, as attorneys for Ramp, were absolutely privileged to plead matters so long as they are relevant to the proceeding: Nagle v. Nagle, 316 Pa. 507. The leading Pennsylvania case is Kemper v. Fort, 219 Pa. 85 (1907), where the court stated, at pages 93 and 94:

"We are inclined to the view that, for false and malicious defamatory allegations appearing in pleadings filed in a court having jurisdiction of what is set forth in them, there is absolute immunity from a suit for libel at the instance of the defamed party only when the defamatory words are relevant and pertinent to the matter or matters to be inquired into by the court; but whether this rule or that of absolute immunity is the correct one, we are not called upon to decide in this case, for the authorities, though differing as to when immunity is absolute, are uniform that when alleged libelous matter in pleadings is relevant and pertinent, there is no liability for uttering it. Public policy requires this, even if at times the privilege of immunity for false and malicious averments in pleadings is abused. Justice can be administered only when parties are permitted to plead freely in the courts and to aver whatever ought to be known without fear of consequence, if a material and pertinent averment should not be sustained. Wrong may at times

be done to a defamed party, but it is damnum absque injuria. The inconvenience of the individual must yield to a rule for the good of the general public."

The reason for this rule is clearly stated by the court in Kemper v. Fort, supra. The case at bar is an excellent example of the possible result if this rule does not prevail. If Wach's complaint should not prevail, then defendants could sue Wachs and his attorneys, Wisler, Pearlstine, Talone & Gerber, for defamation by reason of the allegations set forth in his complaint. Such endless litigation or its possibility would be intolerable and a deterrent to the redress of wrongs through our courts. The limitation is that the matter pleaded be relevant to the cause of action. "Where the question of the relevancy and pertinency of matters alleged in pleadings is to be inquired into, all doubt should be resolved in favor of relevancy and pertinency": Kemper v. Fort, supra, at page 94. The same statement in more precise terms is found in the Restatement of Torts, as follows:

"§586. An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if he has some relation thereto . . .

"Comment c. Relation of statement to proceedings. The privilege stated in this Section is confined to statements made by an attorney while performing his function as such. Therefore it is available only when the defamatory matter has some reference to the subject matter of the pending litigation, although it need not be strictly pertinent or relevant to any issue involved therein . . .

"§587. A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is

absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of a judicial proceeding in which he participates, if the matter has some relation thereto . . .

"Comment c. Relation of statement to proceedings. It is not necessary that the defamatory matter be relevant or material to any issue before the court. It is enough that it have some reference to the subject of the inquiry . . ."

This privilege is based upon the public policy of affording to all men the utmost freedom of access to the courts. If a proceeding is instituted without probable cause, an action may be instituted for the wrongful institution of suit, but not for defamation. For the history of this rule, see Kemper v. Fort, supra.

Plaintiff in the present case did not aver that the allegations complained of in Ramp's complaint were not relevant or pertinent to the cause of action, he merely alleged that they were not necessary. The term "necessary" is not used by the Pennsylvania courts in determining this privilege. Certainly something may be relevant but not necessary to the allegations of the cause of action. The test is whether it is relevant or pertinent to the cause of action.

An examination of Ramp's complaint establishes that the paragraphs complained of by plaintiff were in fact relevant and pertinent to Ramp's cause of action. We may take judicial notice of Ramp's complaint filed with the prothonotary. Paragraph 6 of Ramp's original complaint against David V. Wachs was based upon Wachs' verbal promise to pay the debts of another. Under the Act of April 26, 1855, P. L. 308, 33 PS §3, such a promise must be in writing to be enforceable. There are ways that the oral promise may be taken out of the statute of frauds. Professor

Tanner in his treatise on Principles of Business Law in Pennsylvania (5th ed.) at 344 states:

"Personal Interest. Where the main purpose and object of a promise is to subserve some pecuniary or business interest of the promisor, involving profit to himself, such promise is not within the statute of frauds, although it may also be a promise to pay the obligation of another."

In 16 P. L. Encyc., Statute of Frauds, §6, it is stated:

"The substance of this rule, also described as the 'main purpose and object' test, has also been stated in effect as follows: Whether a promise is within the statute and thus required to be in writing depends upon the object of the promise as revealed by the form of the alleged promise in the circumstances surrounding the making thereof. If the promise is to answer for the debt or default of another the promise is within the statute. If, on the other hand, the main purpose and object of the promissor is, not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damages to the other contracting party, his promise is not within the statute, although it may be in form a provision to pay the debt of another, and although the result of it may incidentally have the effect of extinguishing that liability."

In Eastern Wood Products Co. v. Metz, 370 Pa. 636 (1952), a defendant's promise to pay the debt of a flooring company of which he was the stockholder was considered to be a sufficient interest to take the case out of the statute of frauds. A promise to pay the employes of a defaulting contractor if they continued the improvement of his property was a promise outside of the statute of frauds: Mosley v. Massial, 89 Pa. Superior Ct. 463 (1926).

Ramp's suit against David V. Wachs is based partly

upon the oral promise of Wachs and others to pay Ramp for work Ramp was to do under a contract with the Norristown Parking Authority. This work was to make a study of the feasibility of financing, erecting, operating, maintaining, owning and controlling a mechanical parking garage on Lafayette Street, Norristown. In order to bring Wachs' oral promise or contract out of the statute of frauds, Ramp's complaint pleaded that the property, which was turned into a parking facility as a result of Ramp's study, had been owned by Marlyndy Realty Corp. and that David V. Wachs had a financial interest in that company. Such a pleading was relevant under the principles we have discussed and, therefore, is privileged, even if defamatory.

The fact that Charles Blasband, attorney for Ramp, gave a copy of the complaint to the court reporter of the Norristown Herald, Inc., does not create any liability for libel. Newspaper publications by a lawyer as to pending or anticipated litigation may interfere with a fair trial and thus impair the administration of justice, and generally they are to be condemned, but, in the absence of a rule of court, they subject such an attorney to no sanction. In any event, the information given by the attorney to the reporter was contained in a public record and, sooner or later, would have been perused by the reporter and published. The complaint was a public record and the publication of it by the newspaper did not subject the publisher to liabliity, even if defamatory: Mengel v. Reading Eagle Co., 241 Pa. 367 (1913).

In the Mengel case, at page 368, "one Kornacki brought a suit in trespass against Mengel & Mengel, real estate, loan and insurance agents. After the suit was begun, but before the statement of claim was filed, defendant's reporter went to the office of Kornacki's attorney, and secured a copy of the statement of claim

which was to be filed, and sent it to the editors of the 'Reading Eagle' who made certain changes in the statement and then published it."

The filing of the complaint occurred 11 days after the publication in the newspaper, only a praecipe for summons having been filed at the time of publication. The court, at page 373, stated:

"The jury were properly instructed that, among publications which a newspaper is justified in making, and for which its proprietors cannot be held for damages, even if they be libelous, is that of proceedings in courts of justice as taken from the public records."

Thus, the publication by the Norristown Herald, Inc., was privileged.

The arrangement of material appearing in a newspaper is entirely a matter for the judgment of the publisher, and the court will not interfere if related news items are placed in juxtaposition by the publisher to increase reader interest. If the news is privileged, the placing of the news with relation to other news must be privileged.

It is not necessary to consider defendants' motion to strike, since we have sustained defendants' preliminary objections in the nature of a demurrer.

*Order*

And now, November 27, 1961, defendants' preliminary objections in the nature of a demurrer are sustained, and the complaint is dismissed.