567 A.2d 1036

**In the Matter of XYP.**

Supreme Court of Pennsylvania.

Argued Oct. 27, 1989.

Decided Dec. 27, 1989.

---

XYP, pro. per.

Robert Keuch, Executive Director, for Judicial Inquiry and Review Bd.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This case involves a petition for review and for declaratory relief filed by a judge of the Court of Common Pleas of Philadelphia County, seeking review of disciplinary action taken by the Judicial Inquiry and Review Board (JIRB). The judge in question, to be referred to herein as XYP for purposes of confidentiality, received a letter from the JIRB informing him that he was being admonished for a violation of Canon 3(A) of the Code of Judicial Conduct as a result of comments which he made in two opinions filed in one case.

XYP was unaware that such a letter might be forthcoming, for he had not been afforded any notice by the JIRB that his opinions were under review. The letter, dated May 12, 1989, and signed by the Executive Director and General Counsel for the JIRB, stated the following:

Following a review of the opinions written by you in [case name deleted], the Board has determined that its inquiries into this matter should be closed without any formal action being taken.

However, the Board has directed me to inform you that, in their view, the license taken by you in the opinions constitutes a violation of Canon 3(a) of the Code of Judicial Conduct which require[s] that a judge must be unswayed by partisan interest, public clamor, or fear of criticism and, most importantly, requires that a judge be patient, dignified, and courteous to lawyers and others with whom he deals in his official capacity. They have, therefore, directed me to admonish you that such conduct does not meet the standards required of the members of our judiciary by the Canons. The Board did consider all of the circumstances in this matter and, while they may understand the reasons behind your reactions, the Board concluded that the judicial immunity which a judge enjoys is a solemn and sacred trust that should not be used as a license for the types of opinions issued by you in this matter.

This admonishment will remain part of the permanent confidential records of the Board and should there be similar conduct on your part in the future or any other conduct which the Board finds to be misconduct, this admonishment will be given appropriate consideration in determining the Board's response to that misconduct.

The opinions referred to in the letter were those filed by XYP in response to motions for recusal lodged by the defendants in the relevant case. The relevant case was a class action involving damage claims against manufacturers of lead-based products which purportedly caused health-related injuries to a number of individuals. XYP denied the

motions for recusal, but then recused himself *sua sponte* on the ground that defense counsel had engaged in what XYP perceived as vicious and obstructive conduct designed to prevent him from presiding over the case.

The opinions in question, which addressed only the motions for recusal, consisted of a sixty-two page opinion and a supplemental twelve page opinion. In these opinions XYP discussed at length the grounds asserted for recusal, and, in the course of rejecting these grounds, made numerous comments about defense counsel.[1] As stated in the letter

1. For example, XYP asserted that counsel engaged in a "seemingly deliberate technique of annoyance," an "insulting use of innuendo," a "downright silly and intellectually dishonest" claim, a "misleading" reference to case law, an "exaggerated" allegation, and a "thinly veiled and totally unwarranted false accusation." He stated that defense counsel sought "to accomplish a recusal by any means, fair or foul."

XYP also stated that he was not prejudiced against one of the large law firms representing the defendants even though óne of the firms employed a certain attorney for whom XYP harbored much dislike. The attorney, identified by name in the opinion, was *not* serving as counsel in the [case name deleted] case. XYP stated that the attorney had engaged in a "technique of exaggeration and distortion" and that he had attempted to secure a defeat for XYP in a retention election. XYP stated that the attorney had "weasel-worded" an affidavit, publicized "insidious and malicious falsehoods," engaged in "an unworthy and unprofessional act" as well as "improprieties, dishonesty and unethical conduct," and that his "beliefs and impressions are clever distortions and falsehoods ... [springing] ... from his own capacity for wrongful and vindictive conduct." The attorney was also accused by XYP of "lying to the public and encouraging lying to the public," of acting "out of a personal vindictiveness and for purposes of revenge," and of certain "despicable and dishonest" behavior in "obtain[ing] monies by false pretenses." XYP further stated that the attorney had been characterized as an "ethical three dollar bill" and as "an 'ethical midget' who masquerades (with considerable success) as an 'ethical giant' [who] bores into positions of supposed morality and ethical aspiration ... for purposes of image and private profit." In addition, XYP stated that the attorney had engaged in a "wilful and deliberate breach of his fiduciary obligations" in a effort to "manipulate a choice of judges" in a "shocking and arrogant pursuit of power, control and money."

After making these comments, XYP stated that defense counsel in the [case name deleted] case had elected to "hide behind and to use [the attorney about whom the earlier comments were made] for the purpose of getting a supposed philosophically better oriented judge," and that counsel would "go to any length" and use "despicable techniques" to disqualify any judge who is not philosophically predisposed to favor the defense.

from the JIRB, supra, the JIRB regarded these comments as inappropriate and as a violation of Canon 3(A) of the Code of Judicial Conduct. Canon 3(A) provides, in pertinent part, that a judge "should be unswayed by partisan interests" and "be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity...."

The issue presented in this case is not, however, whether a violation of Canon 3(A) in fact occurred, but rather whether the JIRB had authority to issue a letter of admonition to XYP. Under Art. V, § 18(e)-(h) of the Pennsylvania Constitution, it is clear that the JIRB lacked the necessary authority. Our Constitution provides:

(e) The board [JIRB] shall keep informed as to matters relating to grounds for suspension, removal, discipline or compulsory retirement of justices or judges. It shall receive complaints or reports, formal or informal, from any source pertaining to such matters, and shall make such preliminary investigations as it deems necessary.

(f) The board, after such investigation, may order a hearing concerning the suspension, removal, discipline or compulsory retirement of the justice or judge....

(g) If, after hearing, the board finds good cause therefor, it shall *recommend* to the Supreme Court the suspension, removal, discipline or compulsory retirement of the justice or judge.

(h) *The Supreme Court shall review* the record of the board's proceedings on the law and facts and may permit the introduction of additional evidence. *It shall order* suspension, removal, discipline or compulsory retirement,

Comments were also made by XYP regarding large law firms in the Philadelphia area. He stated that they "sometimes create grave problems for the judicial system ... by engaging in partisan, contentious and pretentious activities in both judicial elections and judicial retention elections" and that they pose "a threat to judicial independence." He also denounced "persons of economic power" for an alleged "sophisticated technique" of influencing cases through social contacts, influence of elections, and hiring power.

or wholly reject the recommendation, as it finds just and proper.

(Emphasis added).

The formal powers of the JIRB, under these constitutional provisions, are plainly limited to *investigating* the conduct of the judiciary and making *recommendations* to this Court regarding disciplinary sanctions. This Court, rather than the JIRB, has the exclusive constitutional power to impose sanctions. *See also Matter of Glancy,* 515 Pa. 201, 217, 527 A.2d 997, 1005 (1987). By administering an admonition to XYP, thereby imposing a form of disciplinary sanction, the JIRB exceeded the scope of its authority. The admonition must, therefore, be expunged from records maintained by the JIRB.

 The Rules governing the JIRB specify that the JIRB can, of its own volition, or in response to allegations by a complainant, institute an investigation of alleged judicial improprieties. *See* Rule 1, "Preliminary Investigation." We believe, however, that it is necessary to limit the investigatory power of the JIRB in cases such as this where the *sole* focus of inquiry is a judicial opinion. Otherwise, fear of investigation by the JIRB might unduly inhibit and chill judges in the performance of their duties.

There has long been recognized an absolute privilege which protects judges from liability for statements made during the performance of their judicial duties. *See Post v. Mendel,* 510 Pa. 213, 507 A.2d 351 (1986); *Kemper v. Fort,* 219 Pa. 85, 67 A. 991 (1907). Judicial immunity rests upon a recognition of the necessity of preserving an independent judiciary, and reflects a belief that judges should not be hampered by fear of vexatious suits and personal liability. It also reflects a view that it would be unfair to expose judges to the dilemma of being required to render judgments while at the same time holding them accountable to the judgment of others. As stated in *Stump v. Sparkman,* 435 U.S. 349, 363, 98 S.Ct. 1099, 1108, 55 L.Ed.2d 331, 343 (1978) (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872)), "the doctrine of judicial immunity is

thought to be in the best interests of 'the proper administration of justice ... [, for it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *See also Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 323–24, 275 A.2d 53, 56 (1971) ("The reasons for the absolute privilege are well recognized. A judge must be free to administer the law without fear of consequences.). Thus, the JIRB is hereby directed to refrain from initiating such investigations.

Immunity is, of course, a solemn and sacred trust that should not be abused, and it is not to be regarded as a license for the judiciary to engage in improprieties. This Court will, in cases of flagrant and egregious abuse of this trust, initiate appropriate disciplinary proceedings.

We therefore vacate the admonishment imposed upon XYP, and order that the admonishment be expunged from records maintained by the JIRB, as well as all other such admonitions that may have been privately entered in the past.

LARSEN, J., did not participate in the consideration or decision of this case.