Catherine F. LANGELLA, Appellant

v.

Dominic A. CERCONE, Jr., Appellee.

Superior Court of Pennsylvania.

Submitted Aug. 15, 2011.

Filed Sept. 2, 2011.

Catherine F. Langella, appellant, pro se.

Mary E. Butler, Philadelphia, for appellee.

BEFORE: ALLEN, LAZARUS, and OTT, JJ.

OPINION BY LAZARUS, J.:

Catherine F. Langella appeals from the order of the Court of Common Pleas of McKean County, dated October 15, 2010, sustaining Dominic A. Cercone, Jr.'s preliminary objections and dismissing her complaint with prejudice. We affirm in part, reverse in part, and remand for reinstatement of Langella's complaint.

Dominic A. Cercone, Jr. (hereinafter "Judge Cercone") is the Magisterial District Judge for District Number 48–1–01, located in McKean County, Pennsylvania. On October 22, 2007, Catherine F. Langella (hereinafter "Langella") was charged with simple assault [1] and harassment [2] for striking her husband, then the McKean County Chief Public Defender. Langella was arraigned before Judge Cercone, a colleague and friend of Langella's husband, who set Langella's bail at $5,000.00 unsecured. Langella posted bail the same day and was released.

On November 2, 2007, Langella's husband reported that Langella violated the

1. 18 Pa.C.S.A. § 2701.

2. 18 Pa.C.S.A. § 2709.

conditions of her bail and Langella was arrested. That afternoon, Langella appeared for a hearing before Judge Cercone, who revoked her bail.

Langella alleges that during the November 2 hearing, she attempted to testify that she had not intentionally violated the terms of her bail, but Judge Cercone told her to "shut up." Appellant's Complaint, 6/15/2010, at ¶ 5. When Langella pleaded with Judge Cercone to allow her to go home to care for her more than forty rescue animals, Judge Cercone told her she had "more important things to worry about than her cats" and remanded her to jail. *Id.* at ¶¶ 6–7. Langella was then transported to the McKean County Prison where she served forty-two days.

During Langella's time in prison, Judge Cercone denied Langella's requests for a preliminary hearing and reinstatement of bail, and, according to Langella's complaint, falsified an official court document that kept her in prison without conviction or legal representation. Langella was finally granted a preliminary hearing on December 12, 2007. During the hearing, Judge Cercone threatened Langella with involuntary commitment to a psychiatric facility. Langella subsequently saw a psychiatrist who determined that no psychiatric commitment was necessary. Following the evaluation, Langella was allowed to return home, at which time she found her home destroyed and many of her rescue animals dead.

Two years later, on December 9, 2009, Langella contacted Judge Cercone's office to ask for an appointment with the judge. At 1:00 PM that afternoon, Langella met with Judge Cercone in his chambers in Bradford, Pennsylvania, and spoke with him with one of his secretaries present.

Langella began to speak with Judge Cercone about his actions toward her during the 2007 hearing, but Judge Cercone abruptly stood up and escorted Langella out of the office into the lobby. Langella avers that Judge Cercone then stated to his office staff, "I think [Langella] is having another episode. I think she needs to be committed. I think we should call Stoney (Greenman)." [3] *Id.* at ¶ 17.

Langella subsequently filed a Section 1983 [4] suit in the United States District Court for the Western District of Pennsylvania naming Judge Cercone as a defendant. In evaluating Judge Cercone's motion to dismiss Langella's complaint, Senior District Court Judge Maurice B. Cohill, Jr. distinguished Judge Cercone's actions in the 2007 criminal proceeding from the 2009 meeting with Langella. *See Langella v. Cercone,* No. 09–cv–312E, 2010 WL 2402940, at *1 (E.D.Pa. June 10, 2010). Judge Cohill ruled that Judge Cercone's actions in 2007 were conducted within his judicial capacity and were, therefore, protected by absolute judicial immunity. *See id.* at *8. As to Judge Cercone's actions toward Langella in 2009, Judge Cohill found that the actions were not undertaken in a judicial capacity and were therefore not protected by judicial immunity. *Id.* Nevertheless, Judge Cohill dismissed Langella's complaint, ruling that Langella's allegations of verbal abuse, threats and harassment, without any reinforcing act, were not actionable under Section 1983. *Id.*

On June 16, 2010, Langella filed a second complaint against Judge Cercone in the Court of Common Pleas of McKean County alleging a civil cause of action for intentional infliction of emotional distress based on his actions in 2007 and 2009.

---

**3.** Stoney Greenman is a mental health professional.

**4.** 42 U.S.C. § 1983.

Judge Cercone filed preliminary objections in the nature of a demurrer. The Honorable Richard N. Saxton, S.J., sustained the demurrer, holding that Judge Cercone's actions in both 2007 and 2009 were within his judicial capacity, and thus protected by judicial immunity.

 Langella filed a timely appeal on May 13, 2011. Langella raises the following issues for our review:

1. DID THE TRIAL COURT ERR IN SUSTAINING [JUDGE CERCONE'S] PRELIMINARY OBJECTIONS AND DISMISSING PLAINTIFF'S COMPLAINT?

2. WAS [JUDGE CERCONE] ENTITLED, AS A MATTER OF LAW, TO JUDICIAL IMMUNITY WITH RESPECT TO THE CLAIMS RAISED IN PLAINTIFF'S COMPLAINT?

The relevant scope and standard of review in examining a challenge to an order sustaining preliminary objections in the nature of a *demurrer* are as follows:

Our review of a trial court's sustaining of preliminary objections in the nature of a *demurrer* is plenary. Such preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion.

All material facts set forth in the complaint as well as all inferences reasonably [deducible] therefrom are admitted as true for [the purpose of this review]. The question presented by the *demurrer* is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a *demurrer* should be sustained, this doubt should be resolved in favor of overruling it.

*Lerner v. Lerner,* 954 A.2d 1229, 1234 (Pa.Super.2008) (internal citations omitted).

 "[J]udges are absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice, provided there is not a clear absence of all jurisdiction over subject matter and person." *Feingold v. Hill,* 360 Pa.Super. 539, 521 A.2d 33, 36 (1987) (citing *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). Thus, judicial immunity requires a two-part analysis: first, whether the judge has performed a judicial act; and second, whether the judge has some jurisdiction over the subject matter before him. "The rationale in support of such protection is that for magistrates to exercise their discretion freely and apply their understanding of the law to the facts before them, they must be granted such a measure of independence that they are not compelled to respond in damages for mistakes honestly made provided they have not acted beyond the pale of their authority." *Beam v. Daihl,* 767 A.2d 585, 586 (Pa.Super.2001).

 In determining the limits of judicial immunity, courts have attempted to draw a line between "truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges." *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Petition of Dwyer,* 486

Pa. 585, 406 A.2d 1355, 1361 (1979) (quoting *Stump, supra* at 362, 98 S.Ct. 1099). Thus, administrative, legislative or executive functions of a judge, even if assigned to the judge by law, are not regarded as purely "judicial" acts, and are not entitled to judicial immunity. *See Forrester, supra* at 227, 108 S.Ct. 538. For actions taken by judges outside of the regular legal proceedings, the courts have looked to four factors that support a finding that a judicial act is involved:

> (1) The precise act complained of … is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

*Harper v. Merckle,* 638 F.2d 848, 858 (5th Cir.1981) (citation omitted).

Langella's claim of severe emotional distress arises from Judge Cercone's actions toward her in the 2007 criminal proceedings and the 2009 meeting, each of which requires a separate analysis of the issue of judicial immunity.

 Judge Cercone's presiding over the 2007 criminal proceedings is a judicial function that falls squarely within the category of protected judicial acts. *See Forrester, supra* at 227, 108 S.Ct. 538 (judicial resolution of dispute between parties in court allows for uncontroversial application of judicial immunity). Further, all of Judge Cercone's statements during the proceeding, including his alleged falsification of a court document, were made within his jurisdiction to preside over criminal proceedings. *See* 42 Pa.C.S.A. § 1515 (statutory authority conferring jurisdiction to magisterial district judges in all criminal proceedings). That Judge Cercone allegedly acted with prejudice and malice in performing these judicial acts does not

eliminate the protection of judicial immunity. *See Feingold, supra.* Accordingly, Langella's claim against Judge Cercone for his actions in 2007 are barred by judicial immunity.

 Judge Cercone's 2009 meeting with Langella presents a more difficult question regarding the limits of judicial immunity. After careful review, we find that Judge Cercone lacked jurisdiction over the subject matter before him and that his actions were not judicial acts.

 First, judicial immunity does not protect Judge Cercone because he lacked jurisdiction over the 2009 matter. Where there is a clear absence of jurisdiction over the subject matter and person, judicial immunity will not attach. *Feingold, supra* at 36. The facts here reveal a clear absence of jurisdiction. When Langella met with Judge Cercone in 2009, she was no longer a party to any action before the judge, and she did not go to discuss any legal matter before the court. Instead, she met with Judge Cercone to discuss a personal matter regarding a case decided two years earlier. A judge does not automatically obtain jurisdiction over a person merely because the person enters the judge's chambers to discuss matters ancillary to a prior decided case. Therefore, Judge Cercone lacked jurisdiction over Langella in the 2009 meeting.

Second, judicial immunity does not protect Judge Cercone because the 2009 meeting did not involve judicial acts. The trial court cites the Supreme Court's decision in *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991), to support its finding that Judge Cercone's acts were protected under judicial immunity; however, the facts of *Mireles* are distinguishable from the present case. In *Mireles,* the Supreme Court held that judicial immunity barred suit against a California Superior

Court judge who ordered police officers to use excessive force to bring into his courtroom a lawyer who had failed to appear for a pending case. *Id.* at 10, 112 S.Ct. 286. The Court reasoned, "[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." *Id.* at 12, 112 S.Ct. 286. Further, "[the lawyer], who was called into the courtroom for purposes of a pending case, was dealing with [the judge] in the judge's judicial capacity." *Id.* Thus, *Mireles* recognized that a judge's actions, even if excessive, are protected by judicial immunity if they serve a judicial function. *See id.* at 13, 112 S.Ct. 286 ("[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'").

Here, unlike *Mireles*, Judge Cercone was not engaged in a function generally performed by a judge when he met with Langella in 2009. Langella was not involved in any case pending before Judge Cercone when she went to meet him in his chambers, and Judge Cercone was not adjudicating any legal issue. Additionally, unlike *Mireles*, Judge Cercone was not acting in an official capacity because the meeting with Langella was personal. Thus, the issue here is not that Judge Cercone's actions exceeded the protection of judicial immunity, but that judicial immunity does not apply.

The factors adopted by the Fifth Circuit in *Harper, supra,* reinforce our analysis of *Mireles.* Although the second factor from *Harper,* that the events occurred in the judge's chambers, weighs in favor of judicial immunity, the first, third, and fourth factors all weigh strongly against it.

The first factor is not satisfied because the precise act complained of here, that Judge Cercone told Langella she needed psychiatric help in front of his office staff, did not arise out of a normal judicial function. Judge Cercone made these statements during a personal meeting, unrelated to any legal matter before the judge, and they did not further any function required by his role as a judge. *See Forrester, supra* at 227, 108 S.Ct. 538 (judges are not entitled to judicial immunity for acts that serve a non-judicial function, even if the act is a necessary part by the job).

The third factor is not established because the controversy did not center on any case pending before Judge Cercone. Langella's criminal case had concluded two years earlier and Langella was not involved in any other action before the court.

Finally, the fourth factor is not met because the confrontation did not arise out of a visit to the judge in his official capacity. Langella asserts in her complaint that Judge Cercone was a friend and colleague of her husband's for nearly twenty years, and that she went to visit Judge Cercone for personal reasons to determine whether he "expressed any regret, remorse or sorrow for his actions of 2007." Appellant's Complaint, ¶¶ 5, 14. Accepting the averments in the complaint as true, Langella did not intend to meet Judge Cercone in an official judicial capacity. *See Stump, supra* at 362, 98 S.Ct. 1099 (expectations of parties is factor in determination of judicial act). Therefore, Judge Cercone's actions during the meeting were not protected judicial acts, and judicial immunity does not apply.

Accordingly, we affirm the order of the trial court as to Judge Cercone's actions in the 2007 criminal proceedings, and reverse and remand as to his actions in the 2009 meeting with Langella.[5]

---

5. Our holding is also consistent with the policy underlying the judicial immunity doctrine.

"Immunity is ... a solemn and sacred trust that should not be abused, and it is not to be

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

regarded as a license for the judiciary to engage in improprieties." *Matter of XYP*, 523 Pa. 411, 567 A.2d 1036, 1039 (1989). The purpose of judicial immunity is to encourage judges to freely exercise their discretion in applying the law without fear of personal civil action. *See Beam, supra* at 586. The 2009 meeting with Langella did not involve any

activity by Judge Cercone that would justify special protection. Judge Cercone was not deciding any issues in a case currently before him, or considering the application of any law. Judge Cercone was merely meeting with Langella for what she believed was a personal matter, for which no immunity should attach.