Andrea J. Dyer now Andrea      :
Jeanne Woodling and Benjamin A.     :
Liebersohn,                    :
           Appellants       :
                      :
        v.              :
                      :   No. 2055 C.D. 2016
Robert Meacham          :   Submitted: September 22, 2017

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: February 13, 2018

        Andrea J. Dyer, now Andrea Jeanne Woodling (Woodling), and Benjamin A. Liebersohn (Liebersohn) (collectively, Appellants) appeal from the Lycoming County Common Pleas Court's (trial court) December 8, 2016 order dismissing their civil complaint against court-appointed psychologist Robert Meacham, M.Ed. (Meacham) for damages purportedly arising from Meacham's recommendation to the trial court in Woodling's custody proceeding[1] (Complaint). There are seven issues before this Court: (1) whether this Court has subject-matter jurisdiction; (2) whether the trial court erred or abused its discretion by taking judicial notice of a fact; (3) whether the trial court erred by raising affirmative defenses *sua sponte*; (4) whether the trial court erred or abused its discretion by dismissing Appellants' Complaint based upon the trial court's *sua sponte* affirmative defenses; (5) whether the trial court erred

---

[1] Liebersohn is Woodling's fiancé. He has no legal relationship to the children and was not a party to the underlying custody matter.

relative to its rulings on any or all of the affirmative defenses; (6) whether the trial court erred by classifying the Complaint as a strict liability action; and, (7) whether the trial court erred or abused its discretion by refusing to allow Appellants to conduct discovery.

In October 2012, the trial court appointed Meacham to conduct psychological evaluations of Woodling and her former husband David Dyer (Dyer) for purposes of issuing a custody recommendation. In March 2013, before Meacham was scheduled to make his recommendation, Woodling and Dyer agreed to the trial court's appointment of Meacham as their parenting coordinator, to assist them in resolving divorce and custody issues. However, on April 23, 2013, the Pennsylvania Supreme Court adopted Pennsylvania Rule of Civil Procedure No. (Rule) 1915.11-1, which vacated parenting coordinator appointment orders as of May 23, 2013.[2] According to the Complaint, the trial court issued an order acknowledging the rule change, but nevertheless retained Meacham to assist Woodling and Dyer in mediating certain issues, such as holiday schedules.[3] Appellants aver that Meacham had no contact with Woodling or her children from June 2013 until the October 3, 2013 custody hearing, when Meacham presented custody recommendations to the trial court, which the trial

---

[2] Rule 1915.11-1 states:

> Only judges may make decisions in child custody cases. Masters and hearing officers may make recommendations to the court. Courts shall not appoint any other individual to make decisions or recommendations or alter a custody order in child custody cases. **Any order appointing a parenting coordinator shall be deemed vacated on the date this rule becomes effective.** Local rules and administrative orders authorizing the appointment of parenting coordinators also shall be deemed vacated on the date this rule becomes effective.

Pa.R.C.P. No. 1915.11-1 (emphasis added).

[3] The order is not part of the certified record submitted to this Court.

court adopted on October 4, 2013. Appellants did not appeal from the trial court's custody decision.

On July 2, 2014, Appellants instituted a civil action against Meacham by writ of summons. *See* Certified Record (C.R.) Item 2. On the trial court's civil cover sheet form, Appellants designated that the action was in tort for slander/libel/defamation. *See* C.R. Item 3. On October 5, 2015, Appellants filed the Complaint.[4] *See* C.R. Item 6. Appellants did not file a certificate of merit (COM) pursuant to Rule 1042.3(a).[5] On November 5, 2015, Meacham filed a Notice of Intention to Enter Judgment of Non Pros on Professional Liability Claim pursuant to Rule 1042.7 (Notice).[6] *See* C.R. Item 9. On December 3, 2015, Appellants filed a Motion to Determine Necessity to File a Certificate of Merit Under Rule 1042.6(c) (COM Motion).[7] *See* C.R. Item 11. On January 22, 2016, Appellants filed their first

---

[4] Appellants' Complaint consisted of 230 paragraphs divided among eight counts for negligence per se, negligence related to due process, informed consent, intentional infliction of emotional harm, and professional liability/standard of care.

[5] Under Rule 1042.3, contemporaneous with or within 60 days of filing a professional liability complaint against a licensed psychologist, a plaintiff is required to file a COM which, "[a]mong other things, . . . must contain a certified statement from a licensed professional that the defendant's conduct fell outside professional standards of care or that expert testimony is unnecessary for prosecution of the claim." *Zokaites Contracting Inc. v. Trant Corp.*, 968 A.2d 1282, 1286 (Pa. Super. 2009). "If [Rule 1042.3] applies and the plaintiff fails to provide the [COM], the prothonotary may, on praecipe of the defendant, enter a judgment of *non pros* against the plaintiff. *See* Pa.R.C.P. [No.] 1042.6." *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 321 (Pa. Super. 2007), *aff'd,* 17 A.3d 310 (Pa. 2011).

[6] Rule 1042.7(a) authorizes the prothonotary to enter a non pros judgment based on a plaintiff's failure to file a COM within the required time if, inter alia, no COM is timely filed, and there is no pending motion to determine whether a COM is required. *See* Pa.R.C.P. No. 1042.7(a).

[7] Rule 1041.6(c) provides:

> Upon the filing of a notice [seeking to enter a non pros judgment under Rule 1042.7(a)], a plaintiff may file a motion seeking a determination by the court as to the necessity of filing a certificate of merit. The filing of the motion tolls the time period within which a certificate of merit must be filed until the court rules upon the motion. If it is determined that a certificate of merit is required, the plaintiff must file the

3

request for production of documents. *See* C.R. Item 17. On February 29, 2016, Appellants filed a Motion to Compel Discovery (Discovery Motion) based on Meacham's failure to timely respond thereto. *See* C.R. Item 19. On May 3, 2016, the trial court heard the parties' oral argument on Appellants' COM and Discovery Motion. The parties were permitted to file supplemental briefs thereafter.[8] *See* C.R. Item A. On December 8, 2016, the trial court dismissed the Complaint.[9] *See* C.R. Item 27. Appellants appealed to this Court.[10]

## Jurisdiction

Initially, Meacham argues that this Court lacks jurisdiction over this matter. However, Section 704 of the Judicial Code states, in pertinent part: "The **failure of an appellee to file an objection to the jurisdiction of an appellate court within such time as may be specified by general rule**, shall . . . operate to perfect the appellate jurisdiction of such appellate court[.]" 42 Pa.C.S. § 704 (emphasis added). Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 741(a) further specifies: "The failure of an appellee to file an objection to the jurisdiction of an appellate court **on or prior to the last day under these rules for the filing of the record shall** . . . **operate to perfect the appellate jurisdiction** of such appellate court[.]" Pa.R.A.P. 741(a)

---

certificate within twenty days of entry of the court order on the docket or the original time period, whichever is later.

Pa.R.C.P. No. 1042.6(c).

[8] Argument was scheduled for February 2, 2016, but was continued by a January 25, 2016 order that recused the trial court's judges from this case. *See* C.R. Items 11, 18. Argument was re-scheduled before specially-presiding Senior Judge Carmen D. Minora for May 3, 2016. *See* C.R. Item 22.

[9] The trial court declared that the order shall be a "Final Order triggering any dissatisfied party's rights to direct appeal." December 2, 2016 Order, C.R. Item 27.

[10] "Our scope of review of the trial court's order in *sua sponte* dismissing the [C]omplaint is plenary because the trial court dismissed [Appellants' C]omplaint for failure to state a cause of action upon which relief may be granted." *Owens v. Shannon*, 808 A.2d 607, 609 n.5 (Pa. Cmwlth. 2002).

4

(emphasis added). Pa.R.A.P. 1931(a) states, in relevant part: "[T]he record on appeal, including the transcript and exhibits necessary for the determination of the appeal, shall be transmitted to the appellate court **within 60 days after the filing of the notice of appeal**." (Emphasis added).

In the instant matter, since the notice of appeal was filed on December 23, 2016, the trial court's record and, thus, Meacham's jurisdictional objection was due on or before February 21, 2017. Because Meacham's brief, which is where he first raises his objection to this Court's jurisdiction, was not filed until May 8, 2017, his objection is waived. Accordingly, this Court has appellate jurisdiction.

**Appellants' Issues**

Appellants contend that the trial court erred by taking judicial notice of the fact that Meacham was a court-appointed psychologist. However, Appellants asserted in their Complaint that "[Meacham] was appointed by the [trial c]ourt for the purpose of performing psychological evaluations of [Woodling], her former spouse and their children." Complaint ¶ 4; *see also* Complaint ¶ 34 ("[Meacham] was an agent of the [trial c]ourt."). At argument, Woodling did not dispute but, rather, agreed that "[Meacham] was acting as a psychologist appointed by the state, by the government, by the [trial] court." Notes of Testimony, May 3, 2016 (N.T.) at 25. Based thereon, as well as its administrative records, the trial court took "judicial notice of the fact that [Meacham] was court-appointed to deal with the evaluation of the parties for child custody purposes." Trial Court Op. at 4. Consequently, the trial court concluded that "[Meacham] was acting per the [trial] court's appointment as an agent of the [trial court.]" Trial Court Op. at 4.

Pennsylvania Rule of Evidence 201 authorized the trial court to, *sua sponte* at any stage of a proceeding, take judicial notice of adjudicative facts ("about the events, persons and places relevant to the matter before the court." Comment to

5

Notes, Pa.R.E. 201(a). If the fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[,] the trial court may judicially notice it." Pa.R.E. 201(b). However, because a judicially-noticed fact is not conclusive, the opposing party may submit evidence disproving it. *See* Pa.R.E. 201(e).

Here, because Appellants agree with the trial court's judicially-noticed fact,[11] and Meacham's court-appointment as parental coordinator and then mediator in Woodling's child custody proceeding is a matter of the trial court's record, this Court holds that the trial court did not err by taking judicial notice of that fact.

Appellants also assert that the trial court erred by raising affirmative defenses *sua sponte*, and erred or abused its discretion by dismissing Appellants' Complaint based upon those affirmative defenses. Before the trial court were Appellants' COM and Discovery Motions. Rather than rule on those specific matters, the trial court stated: "This [trial c]ourt believes other issues not specifically addressed by the parties control the outcome of this case and will raise what it believes to be defining issues *sua sponte*[,]" including lack of duty, lack of standing, lack of judicial power to impose remedy, waiver, judicial immunity and quasi-judicial immunity, and summarily dismissed the Complaint. Trial Court Op. at 3; *see also* Trial Court Op. at 14. Our Supreme Court has declared:

> [T]rial courts should not 'act as the defendant's advocate.'
> *O'Hare* [*v. Cty. of Northampton,* 782 A.2d 7, 15 (Pa.
> Cmwlth. 2001)]. For a trial court to raise an argument in

---

[11] Appellants also argue in their briefs to this Court that although Meacham was a court-appointed parenting coordinator, that role changed effective May 23, 2013 pursuant to Rule 1915.11-1. Appellants further contend that the trial court retained Meacham's professional services after May 23, 2013, and that Meacham's custody recommendation was made to the trial court on October 3, 2013. They also raise a question about whether Meacham's October 3, 2013 recommendation was prepared before or after his term as court-appointed parenting coordinator term ended. Although these arguments relate to Meacham's court-granted authority at any given time, they do not disprove that the trial court appointed Meacham as parenting coordinator and then mediator.

6

favor of summary judgment *sua sponte* and grant summary judgment thereon risks depriving the court [of] the benefit of advocacy on the issue, and depriving the parties the opportunity to be heard. *See Luitweiler v. Northchester Corp., . . .* 319 A.2d 899, 901 n.5 ([Pa.] 1974) (holding it inappropriate for trial court to raise failure to state claim upon which relief may be granted *sua sponte*).

*Yount v. Pa. Dep't of Corr.*, 966 A.2d 1115, 1119 (Pa. 2009). Because the trial court "raise[d] an argument in favor of summary judgment *sua sponte* and grant[ed] summary judgment," it "depriv[ed] the court the benefit of advocacy on the issue[s], and depriv[ed] the parties the opportunity to be heard." *Id.* Accordingly, the trial court erred by raising affirmative defenses *sua sponte*, and dismissing Appellants' Complaint based upon those affirmative defenses.

We acknowledge that "a governmental party is permitted to raise immunity at any time in the process, even at the appellate stage, because the defense is non-waivable." *Taylor v. City of Phila.*, 692 A.2d 308, 313 (Pa. Cmwlth.), *aff'd,* 699 A.2d 730 (Pa. 1997). Here, Meacham discussed judicial and quasi-judicial immunity in his appeal brief to this Court in defense of the trial court's decision. Nowithstanding, the record before this Court lacks the evidence and operative facts to determine whether Meacham is a governmental party to whom immunity extends based on the circumstances of this case.

The trial court summarily dismissed this action, *inter alia*, because Meacham's role as mediator afforded him judicial and/or quasi-judicial immunity.[12] This Court has ruled:

> [J]udges are immune from liability when the judge has **jurisdiction over the subject matter** before him **and he is performing a judicial act**. Judges are absolutely immune from liability for damages when performing judicial acts,

---

[12] The trial court offered no legal support for its determination that it could *sua sponte* raise a defense expressly reserved to a governmental party. Further, this Court would be hard-pressed to agree that judicial economy is served when a court acts without authority.

7

> even if their actions are in error or performed with malice, provided there is not clear absence of all jurisdiction over the subject matter and person.

*Logan v. Lillie*, 728 A.2d 995, 998 (Pa. Cmwlth. 1999) (citation omitted; emphasis added). However, "[i]n order to determine whether an individual is entitled to quasi-judicial immunity, we must first examine the nature of the actions complained of to ascertain whether they were performed within the quasi-judicial adjudicatory function." *Pollina v. Dishong*, 98 A.3d 613, 621 (Pa. Super. 2014). Judicial immunity only shields judicial acts. *Langella v. Cercone*, 34 A.3d 835 (Pa. Super. 2011).

Here, newly-adopted Rule 1915.11-1 prohibited masters, hearing officers and other court-retained personnel from making child custody recommendations after May 23, 2013. Pursuant to Rule 1915.11-1, Meacham was removed from his court-appointed parenting coordinator role as of May 23, 2013, and was designated Woodling's and Dyer's mediator regarding visitation schedules, etc. This Court does not know the specific parameters of Meacham's post-Rule 1915.11-1 assignment because the trial court's letter is not part of the record before the Court.

Woodling and Liebersohn assert in their Complaint that, after Meacham was removed as parenting coordinator and could no longer legally make custody recommendations to the trial court, he nevertheless made such a recommendation that the trial court adopted without a hearing and, thus, Meacham violated Rule 1915.11-1 and Section 41.61 of State Psychology Board's Code of Ethics, 49 Pa. Code. § 41.61, requiring that he comply with the law and not violate his clients' rights. *See* Complaint ¶¶ 18-23, 31-36.

The trial court acknowledged in its opinion that it "could find no definitive appellate guidance on this precise fact pattern" and, thus, looked to *Humphrey v. Court of Common Pleas of York County*, 640 F.Supp. 1239 (M.D. Pa. 1986), wherein the "court found that judicial immunity applies to masters and other judicial officers where their actions are taken in a judicial capacity[,]" so long as they "[are] not acting in a

8

clear absence of jurisdiction." Trial Ct. Op. at 7. The trial court stated that the essence of Woodling's and Liebersohn's claims are that Meacham communicated misinformation to the trial court about Woodling that resulted in their harm and, even if proven, Meacham is immune. *See* Trial Ct. Op. at 7.

Notwithstanding, this Court's jurisdiction depends upon whether Meacham was acting as a judge and/or an officer or employee of the Commonwealth. If Meacham exceeded his duties as prescribed by the law and the trial court's mediator assignment, this Court would not have jurisdiction to render any decision.[13]

Section 762(a) of the Judicial Code provides, in relevant part:

> [T]he Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases:
>
> (1) Commonwealth civil cases.--All civil actions or proceedings:
>
>> (i) Original jurisdiction of which is vested in another tribunal by virtue of any of the exceptions to [S]ection 761(a)(1) [of the Judicial Code] (relating to [the Commonwealth Court's] original jurisdiction over civil actions by or against the Commonwealth government[14] or an officer thereof acting in his official capacity) . . . .
>>
>> (ii) By the Commonwealth government, including any officer thereof acting in his official capacity.

---

[13] The Superior Court would then have jurisdiction. 42 Pa.C.S. § 742.

Notably, the Dissenting Opinion focuses solely on judicial immunity and fails in any manner to address jurisdiction. However, jurisdiction must first be determined because without it the Court has no authority to act.

[14] Section 102 of the Judicial Code defines "Commonwealth government" as "[t]he government of the Commonwealth, **including the courts and other officers or agencies of the unified judicial system**, the General Assembly and its officers and agencies, the Governor, and the departments, boards, commissions, authorities and officers and agencies of the Commonwealth[.]" 42 Pa.C.S. § 102.

9

42 Pa.C.S. § 762(a). The term Commonwealth officer is not defined in the Judicial Code. However, in *Opie v. Glascow, Inc.*, 375 A.2d 396 (Pa. Cmwlth. 1977), this Court ruled: "[T]he term 'officers', for jurisdictional purposes, should encompass only those persons who perform state-wide policymaking functions and who are charged with the responsibility for independent initiation of administrative policy regarding some sovereign function of state government." *Id.* at 398. Moreover,

> this Court's jurisdiction must be determined **prior to** any consideration of the immunity of the individual defendant and the status of the individual as an 'officer' or as an 'employee', for jurisdictional purposes, has to be considered, therefore, prior to any decision as to whether or not the individual concerned may be entitled to the protection of the absolute immunity doctrine.

*Id.* (emphasis added); *see also Langella*, 34 A.3d at 839 ("Where there is a clear absence of jurisdiction over the subject matter and person, judicial immunity will not attach.").

We cannot conclude based on this record what Meacham's precise role was, whether he was a governmental party and/or whether he exceeded his authority or violated Rule 1915.11-1 and, thus, whether judicial or quasi-judicial immunity is an absolute defense for his conduct.[15] Accordingly, the trial court "depriv[ed] the court [of] the benefit of advocacy on the issue[s], and depriv[ed] the parties the opportunity to be heard." *Yount*, 966 A.2d at 1119.[16]

---

[15] Without citing any record support, the Dissent simply concludes: "Meacham's precise role is clear – he was a mediator appointed by the [trial] court to assist it in resolving a custody dispute. It is also clear that when making the recommendation concerning custody, he was acting as an agent of the trial judge." Dissenting Op. at 7. The Dissent further declares, again without any record evidence, that Meacham's actions "took place in a judicial proceeding making [him] as well as the trial judge absolutely immune." *Id.* Respectfully, the Dissent's statements are not record facts nor are its conclusions supported by such.

[16] Appellants also contend that the trial court erred in its application of the affirmative defenses. In light of our holding on the trial court's overreach, that issue is moot.

Appellants further argue that the trial court erred by classifying the Complaint as a strict or professional liability action. Appellants specifically contend that although Meacham is a licensed professional psychologist, the Complaint does not assert a professional liability claim against him necessitating a COM under Rule 1042.3.

> The Pennsylvania Superior Court has ruled:

> In order to determine whether an action is a professional negligence claim as opposed to another theory of liability, this Court must examine the averments made in the complaint. *Ditch v. Waynesboro Hosp.,* 917 A.2d 317, 322 (Pa. Super. 2007), [*aff'd*, 17 A.3d 310 (Pa. 2011)]. The substance of the complaint rather than its form is the controlling factor to determine whether the claim against a defendant sounds in professional negligence or contract. *See Merlini v. Gallitzin Water Auth.,* 934 A.2d 100, 106 (Pa. Super. 2007).

*Zokaites Contracting Inc. v. Trant Corp.*, 968 A.2d 1282, 1287 (Pa. Super. 2009). Despite that the parties argued this issue to the trial court, the trial court's dismissal of Appellants' Complaint obviated its ruling on whether a COM is required.

However, based upon our review of the Complaint, Appellants averred that their claims stem from Meacham's actions as court-appointed parenting coordinator until May 23, 2013, and then as mediator until the October 3, 2013 custody hearing, when Meacham presented his recommendation to the trial court. *See* Complaint ¶¶ 4-14. Appellants asserted in Count I of their Complaint that Meacham disregarded Rule 1915.11-1 and the psychologists' ethics code by presenting his custody recommendation and, as a result, Woodling suffered protracted, costly litigation and mental anguish, distress and severe emotional harm. *See* Complaint ¶¶ 16-29. In Count II of their Complaint, Appellants maintain that Woodling was deprived of her constitutional right to due process when Meacham, as the trial court's agent without legal authority, recommended a change to her custody arrangement

11

without a hearing. *See* Complaint ¶¶ 30-39. In Counts III and IV of their Complaint, Appellants specifically averred: "[Appellants] are asserting a professional liability claim against [Meacham,]" Complaint ¶ 41, and that he failed to obtain their informed consent. *See* Complaint ¶¶ 40-87. In Count V of their Complaint, Appellants claimed that Meacham violated the trial court's order regarding his parenting coordinator responsibilities.[17] *See* Complaint ¶¶ 88-101. In Counts VI and VII of their Complaint, Appellants allege that, as a psychologist with extensive knowledge of human behavior, "Meacham, through his position of authority, assisted and continues to assist [Dyer] in furtherance of his abuse," and Woodling and Liebersohn suffered severe emotional distress as a result. Complaint ¶ 108; *see also* Complaint ¶¶ 102-127. Count VIII of their Complaint contains 102 paragraphs specifically averring in what ways Meacham's conduct purportedly violated ethics codes, practice standards and guidelines governing his work for the trial court. Based on the foregoing, the trial court properly classified Appellants' case as a professional liability action. However, because the trial court did not rule on the COM Motion, we remand this matter for the trial court to determine whether Appellants' claims necessitate a COM under Rule 1042.3.

Lastly, Appellants assert that the trial court erred or abused its discretion by refusing to allow Appellants to conduct discovery. In light of the trial court's dismissal of Appellants' Complaint, Meacham's failure to respond to Appellants' discovery request and Appellants' Discovery Motion became moot. However, this Court acknowledges that document requests **may** be made before a COM is filed. Rule 1042.5 specifies:

---

[17] The trial court order to which Count V of the Complaint references was not attached as an exhibit thereto. *See* Complaint ¶¶ 88-101. Rule 1019(i) mandates: "When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof[.]" Pa.R.C.P. No. 1019(i).

12

**Except for the production of documents and things or the entry upon property for inspection and other purposes**, a plaintiff who has asserted a professional liability claim may not, without leave of court, seek any discovery with respect to that claim prior to the filing of [COM].

> *Note:* Upon motion seeking leave of court, the court shall allow any discovery which is required for a licensed professional to make a determination as to whether a defendant deviated from accepted professional standards.
>
> This rule does not preclude a defendant from seeking a protective order under Rule 4012 in response to a request for the production of documents and things or the entry upon property for inspection and other purposes.

Pa.R.C.P. No. 1042.5 (emphasis added). Accordingly, this matter is remanded for the trial court to determine whether Appellants' Discovery Motion should be granted.

Based on the foregoing, the trial court's order is vacated, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrea J. Dyer now Andrea      :
Jeanne Woodling and Benjamin A.  :
Liebersohn,                       :
                    Appellants     :
                              :
          v.                 :
                             :   No. 2055 C.D. 2016
Robert Meacham             :   Submitted: September 22, 2017

## O R D E R

AND NOW, this 13th day of February, 2018, the Lycoming County Common Pleas Court's (trial court) December 8, 2016 order is vacated, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction is relinquished.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrea J. Dyer now Andrea　　　　　:
Jeanne Woodling and Benjamin A.　:
Liebersohn,　　　　　　　　　　　:
　　　　　　Appellants　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　: No. 2055 C.D. 2016
　　　　　　　　　　　　　　　　: Submitted:  September 22, 2017
Robert Meacham　　　　　　　　　:


BEFORE:　　HONORABLE MARY HANNAH LEAVITT, President Judge
　　　　　　HONORABLE ANNE E. COVEY, Judge
　　　　　　HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI　　　　　　　　FILED: February 13, 2018


　　　　　I agree with the majority that the trial court erred in raising the affirmative defense of judicial immunity *sua sponte*.  However, I dissent from the majority remanding that issue to the trial court because the issue of immunity is never waived, and since you can't undo what is done, we should address the issue of whether judicial immunity applies rather than sending the issue back to the trial court. Because judicial immunity does apply, I would affirm the trial court.


　　　　　In this case, then *pro se* plaintiffs collectively filed their unnumbered, approximately thirty-five (35) page, two hundred and thirty (230) paragraph complaint against court-appointed psychologist Robert Meacham, M.Ed. (Meacham)

for damages for psychological malpractice arising from Meacham's recommendation to the trial court in a custody proceeding. There is no dispute that while acting as a parental coordinator and then-mediator in a child custody proceeding, that he was acting pursuant to court appointment.

I agree with the majority that the trial court erred by raising the issue of judicial immunity *sua sponte*. As the majority points out, when a trial court "raise[d] an argument in favor of summary judgment *sua sponte* and grant[ed] summary judgment," it "depriv[ed] the court the benefit of advocacy on the issue[s], and depriv[ed] the parties the opportunity to be heard." (Majority Opinion at 7) (quoting *Yount v. Pennsylvania Department of Corrections*, 966 A.2d 1115, 1119 (Pa. 2009)). And, if immunity was like most other affirmative defenses that require a development of facts, I would join with the majority remanding the case to the trial court.

I do not join with the majority because immunity is not like other affirmative defenses. Akin to jurisdictional issues, governmental parties can raise immunity anytime in the proceeding, including on appeal, because it is an absolute defense that cannot be waived or avoided. *See Philadelphia Police Department v. Gray*, 633 A.2d 1090 (Pa. 1993); *Tulewicz v. Southeastern Pennsylvania Transportation Authority*, 606 A.2d 427 (Pa. 1992); *In re Upset Sale of Properties Against Which Delinquent 1981 Taxes Were Returned to Tax Claim Unit On or About First Monday of May, 1982 (Skibo)*, 560 A.2d 1388 (Pa. 1989). That means that even if Meacham had never raised the issue below and a verdict was rendered against him in the trial court, the issue still could be raised on appeal. When raised on appeal, the

parties then have an opportunity to be heard and present their position on the applicability of the issue of immunity.

I recognize in this case that the trial court raised the issue, not the governmental party. However, the trial court improperly raising the issue cannot be undone and no one would be served by sending it back to the trial court. Because immunity can never be waived and the parties have briefed the issue giving the court the benefit of their advocacy and no operative facts are at issue, I would address the issue of whether judicial immunity applies.

The only immunity issue before us is whether judicial immunity applies. The question of whether that immunity covers a person appointed by the court to carry out a court-related function was addressed in *Clodgo by Clodgo v. Bowman*, 601 A.2d 342 (Pa. Super. 1992). In that case, an action was brought against a doctor seeking lost child support payments because he negligently performed a court-ordered blood test that erroneously excluded a person as the father of the child for whom child support was being sought. Like here, the communication of the erroneous information excluding the person as the father was made in the course of a judicial proceeding and made directly to the court and litigants and pursuant to a court's order. While acknowledging his error, the doctor claimed that he was entitled to judicial immunity.

The Superior Court first addressed the law regarding judicial immunity stating:

> The parameters of the judicial privilege were outlined by the Supreme court in *Post v. Mendel,* 510 Pa. 213, 220, 507 A.2d 351, 355 (1986), quoting *Greenberg v. Aetna*

*Insurance Co.,* 427 Pa. 511, 514, 235 A.2d 576, 577 (1967): "When alleged libelous or defamatory matters, or statements, or allegations and averments in pleadings or in the trial or argument of a case are pertinent, relevant and material to any issue in a civil suit, there is *no civil liability* for making any of them." (Emphasis added). The privilege applies to communications which "are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." *Id.* ... at 355 (emphasis omitted). If the communication falls within that category, "no action will lie" for the communication. *Id.* ... at 354.

*Bowman*, 601 A.2d at 344.

It then went on to decide whether the privilege should apply where the action is for medical malpractice. In answering that question, it stated:

While the immunity issue has been addressed most often in the context of defamation and related actions, our review of the relevant authority compels us to conclude that the form of the action is irrelevant to its application. *Brown v. Delaware Valley Transplant Program,* 372 Pa.Super. 629, 539 A.2d 1372 (1988), is instructive. There, a gunshot victim was discovered and transported to a hospital. The victim, who had no identification, was declared brain dead, and the hospital sought court permission to use his organs for transplants. The defendant at issue in *Brown* was the attorney who prepared the documents needed for court approval for the organ extraction, which was subsequently performed by hospital personnel. The victim's family sued for mutilation of a corpse, intentional infliction of emotional distress, civil conspiracy, malicious use of process, assault and battery, and negligent infliction of emotional distress. We upheld the trial court's dismissal of the attorney from the action which was premised upon application of the doctrine of judicial immunity.

We stated that the issue was whether the privilege should be limited to protection from liability solely for publication of defamatory material. We concluded that, "The immunity bars *actions for tortious behavior*..., so long as it was a communication pertinent to any stage of a judicial proceeding." *Id.* ... at 1374 (emphasis added); *see also Moses v. McWilliams,* 379 Pa.Super. 150, 164, 549 A.2d 950, 957 (1988), wherein we collected cases and observed, "While it is true that immunity from civil liability in judicial proceedings has been applied most frequently in defamation actions, many courts, including those in Pennsylvania, have extended the immunity from civil liability to other alleged torts when they occur in connection with judicial proceedings." Our precedent is clear. The form of the cause of action is not relevant to application of the privilege. Regardless of the tort contained in the complaint, if the communication was made in connection with a judicial proceeding and was material and relevant to it, the privilege applies. Thus, while we agree with appellant's premise that this action is not premised upon defamation but is a medical malpractice action, this does not alter the conclusion that the privilege applies.

*Id.* at 344-345. It then went on to state the danger of not applying judicial immunity to medical malpractice actions:

An example is the psychiatrist asked to give an opinion of parental competency in a custody action. If we allow medical malpractice actions to survive application of the privilege, we open those experts to potential medical malpractice actions premised upon allegedly incorrect assessments of a parent's mental capacity to care for the children. *See, e.g., Gootee v. Lightner,* 224 Cal.App.3d 587, 274 Cal.Rptr. 697 (4 Dist.1990). Similarly, a doctor who renders an opinion as to another doctor's medical malpractice in a civil action instituted by a patient would be open to claims of malpractice based upon that expert's opinion in the civil action. This simply cannot be allowed as the privilege is necessary to prevent a witness from refusing to testify based on a fear of potential civil liability.

DRP - 5

> The rationale for the immunity applies just as strongly to medical malpractice actions as to any other type of civil action.

*Id.* at 345-346.

For the foregoing reasons, I would affirm the trial court's order and respectively dissent.

_____
DAN PELLEGRINI, Senior Judge